IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT E. ELDRIDGE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | 17-cv-4241 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| THE CHALLENGING LAW ENFORCEMENT OFFICIAL, individually and in his/her official capacity, and ILLINOIS CONCEAL CARRY LICENSING REVIEW BOARD, and its members, individually and in their official capacity, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert Eldridge ("Eldridge"), proceeding *pro se*, has filed claims alleging that the Illinois Concealed Carry Licensing Review Board ("the Board") and its individual members (together, "the Board Defendants"), as well as an unnamed law enforcement official, conspired to significantly delay making a decision required for Eldridge to obtain a concealed-carry gun license in Illinois. Eldridge also claims that the Board Defendants failed to provide him notice of the identity of an objecting law enforcement entity and the basis for the objection. According to Eldridge, this alleged conduct violates his Fourteenth Amendment due process rights, as well as criminal civil-rights statutes 18 U.S.C. §§ 241 and 242, and the civil RICO statute, 18 U.S.C. § 1964(c).

1

In his complaint, Eldridge seeks monetary damages and injunctive relief in the form of a Board decision, but since that time, Eldridge has received a concealed-carry license and agrees that his claim for injunctive relief has become moot. The Board Defendants now move to dismiss Eldridge's remaining claims for monetary damages. For the reasons given below, the Board Defendants' motion is granted in part and denied in part.

### **Factual Background**[1]

On October 1, 2015, Eldridge filed an application with the Illinois State Police ("ISP") for a concealed-carry gun license. Compl. at 11, ECF No. 1. Under the Illinois Firearm Concealed Carry Act, 430 Ill. Comp. Stat. 66/1, *et seq.*, the ISP "shall" issue such a license only if, *inter alia*, the Concealed Carry Licensing Review Board determines that the applicant does not pose a danger to the applicant, others, or to public safety. 430 Ill. Comp. Stat. 66/10(a). The ISP is generally required to issue a decision within ninety days of receiving a completed application, but if "any law enforcement agency" objects to the applicant, the ninety-day period is tolled "during the period of review and until the Board issues its decision." 430 Ill. Comp. Stat. 66/15(c).

On November 1, 2015—one month after he submitted his application—Eldridge was notified that a law enforcement agency had filed an objection to his application. Compl. at 11. Eldridge made "numerous" efforts to contact the Board

---

[1] The Court assumes the alleged facts in Eldridge's complaint are true and draws all possible inferences in his favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

but, at the time he filed his complaint, the Board had gone twenty months without acting on his application or telling him who had objected or why. *Id.* at 1–2, 5, 11–12. He believes that the objection and resulting delay were "influenced" by an unidentified person involved with a 2001 criminal proceeding, in which Eldridge was arrested and convicted of a class A misdemeanor for battery. *See id.* at 11–12; Pl.'s Resp. at 2–3, ECF No. 21; *see generally* Pl.'s Resp., Ex. B, *People of the State of Ill. v. Eldridge*, No. 1 CR2 20721, Appeal No. 1-04-1550 (Ill. App. Ct. 2005) (denying appeal of convictions for misdemeanor battery and felony unlawful use of a weapon); *id.*, Ex. C, Order of July 24, 2014, at 1 (vacating felony conviction). According to Eldrigde, as a result of Defendants' conduct, he has suffered "physical injury," including "immense stress" and "mental anguish." *Id.* at 8.

Based on the foregoing events, Eldridge brings claims for violations of: (1) criminal civil-rights statutes, 18 U.S.C. §§ 241 and 242 (Count I); (2) the civil RICO statute, 18 U.S.C. § 1964(c) (Count II); and (3) his Fourteenth Amendment due process rights pursuant to 42 U.S.C. § 1983[2] (Count IV). Eldridge also alleges that Defendants' conduct caused him physical and emotional injury (Count III).

## **Legal Standards**

To survive a motion to dismiss pursuant to Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in the complaint must at least "raise a right to relief above the

---

[2] Although Eldridge asserts claims under both the Fifth and Fourteenth Amendments, he brings his claims against only state actors.

speculative level." *Bell Atl. Corp.*, 550 U.S. at 555. The Court must accept as true all well-pleaded allegations in the complaint and draw all possible inferences in the plaintiff's favor. *See Tamayo*, 526 F.3d at 1081. Mere legal conclusions, however, "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Courts also construe pro se complaints liberally. See *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

## Analysis

The Board Defendants seek dismissal of Eldridge's monetary-damages claims against them in their official capacities on the basis that the Board—and by extension its individual members—are immune to suit under the Eleventh Amendment doctrine of sovereign immunity. They also contend that they are entitled to absolute quasi-judicial immunity for the claims brought against them in their individual capacities. In the alternative, they contend that they are entitled to qualified immunity as to Eldridge's individual-capacity due process claims and that, for the remaining individual-capacity claims, Eldridge lacks standing or otherwise fails to state claim. Eldridge, who is proceeding *pro se*, disagrees that his claims should be dismissed.

### I. Claims Against Board Defendants in Their Official Capacities

Under the Eleventh Amendment's sovereign-immunity doctrine, a plaintiff may not bring suit in federal court against a state or its agencies unless the state consents to suit in federal court or Congress has abrogated the state's immunity. *See Pennhurst v. Halderman*, 465 U.S. 89, 100 (1984); *Kroll v. Bd. of Trs. of the*

*Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991). Illinois has not consented to suits against the Illinois State Police, nor has Congress abrogated Illinois's immunity in this regard. *See Carr v. Ill. State Police*, No. 17 C 413, 2017 WL 5989726, at *3 (N.D. Ill. Dec. 4, 2017) ("The Eleventh Amendment applies to the Illinois State Police as an agency of the State of Illinois.") (citing *Tucker v. Williams*, 682 F.3d 654, 659 (7th Cir. 2012); *Moore v. Ill. State Police*, 2001 WL 1636920, at *2 (N.D. Ill. Dec. 20, 2001) (collecting cases confirming this proposition)); *see also, e.g., Johnson v. Winters*, No. 10 C 5480, 2013 WL 4029114, at *17–18 (N.D. Ill. Aug. 8, 2013) (observing that Illinois has waived sovereign immunity only in the Court of Claims); *Cruz v. Cross*, No. 08 CV 4873, 2010 WL 3655992, at *3 (N.D. Ill. Sept. 10, 2010) (same).

Moreover, suits for monetary damages against employees of state agencies, acting in their official capacities, are treated as suits against the state and likewise are barred by the Eleventh Amendment. *See Garcia v. City of Chi.*, 24 F.3d 966, 969 (7th Cir. 1994). "To determine if a particular entity is a state agency, *i.e.*, an arm of the state, courts look at: (1) the extent of the entity's financial autonomy from the state; and (2) the general legal status of the entity. Of the two, the entity's financial autonomy is the most important factor. In evaluating that factor, [courts] consider the extent of state funding, the state's oversight and control of the entity's fiscal affairs, the entity's ability to raise funds independently, whether the state taxes the entity, and whether a judgment against the entity would result in the

5

state increasing its appropriations to the entity." *Tucker*, 682 F.3d at 659 (internal citations and quotations omitted).

As an initial matter, the Court concludes that the Board is an arm of the State of Illinois. First, the Board's authorizing statute states that it is "created within the Department of State Police," 430 Ill. Comp. Stat. 66/20(a), which is itself an arm of the State of Illinois and immune to suit, *see, e.g., Carr*, 2017 WL 5989726, at *3. Second, the Board appears to have little financial independence from the State, as the only funding mechanism described in its authorizing statute is State appropriations. 430 Ill. Comp. Stat. 66/20(b). Therefore, both factors support the Court's conclusion that the Board is an arm of the State of Illinois.

Finding that no sovereign-immunity exception applies, the Court concludes that the Board and its members, to the extent they are sued in their official capacities, are immune from Eldridge's suit in federal court. These claims are dismissed accordingly.

II. **Claims Against Board Defendants in Their Individual Capacities**

First, the Court must assess whether Eldridge's claims against the Board Defendants in their individual capacities are in fact claims against the State. If so, they are barred by the Eleventh Amendment for the reasons discussed above.

"Under Illinois law, a claim against individual officers will be considered a claim against the state, even when . . . the officials are sued in their individual capacities, if judgment for the plaintiff could operate to control the actions of the

State or subject it to liability."[3] *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001). "If the state law claim is deemed to be against the state, then it must be dismissed." *Id.*; *see Johnson*, 2013 WL 4029114, at *17–18. "Sovereign immunity affords no protection, however, when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority." *Richman*, 270 F.3d at 441. Here, Eldridge asserts that the individual Defendants have violated his statutory and constitutional rights. Therefore, as Defendants implicitly concede in their briefing, the Court concludes that Eldridge's individual-capacity claims cannot be construed as claims that are brought against the State of Illinois.

### A. Board Member Defendants Have Not Shown They Are Entitled to Absolute Quasi-Judicial Immunity

The Court next considers Defendants' contention that Board members, in their individual capacities, are entitled to absolute quasi-judicial immunity—a question that appears to be one of first impression. "Absolute immunity protects members of quasi-judicial adjudicatory bodies when their duties are functionally equivalent to those of a judge or prosecutor." *Heyde v. Pittenger,* 633 F.3d 512, 517 (7th Cir. 2011) (citing *Butz v. Economou,* 438 U.S. 478, 512–13 (1978)). Courts "look to the nature of the function performed, not the identity of the actor who performed it." *Wilson v. Kelkhoff,* 86 F.3d 1438, 1443 (7th Cir. 1996). The entity "seeking

---

[3] A claim is considered to be against the State, "and thus barred by the doctrine of sovereign immunity, when: '(1) [there are] no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State.'" *Johnson*, 2013 WL 4029114, at *17–18 (quoting *Jinkins v. Lee*, 807 N.E.2d 411, 417 (Ill. 2004)).

7

absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Tobin for Governor v. Ill. State Bd. of Elections,* 268 F.3d 517, 522 (7th Cir. 2001).

In *Butz,* the Supreme Court identified "several characteristics of quasi-judicial functions that courts should consider when determining whether a public official is entitled to absolute immunity: (1) the need to assure that the individual can perform his functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for damages actions as a means for controlling unconstitutional conduct; (3) the insulation from political influence; (4) the importance of precedent; (5) the adversarial nature of the process; and (6) the correctability of error on appeal." *Heyde,* 633 F.3d at 517 (citing *Butz,* 438 U.S. at 512).

The presence of substantive hearing rights is central to the application of absolute immunity. *Compare Brunson v. Murray*, 843 F.3d 698, 712–13 (7th Cir. 2016) (declining to grant absolute immunity and stating that "[m]ost important for our purposes, the [defendant entity's authorizing] [a]ct does not grant a right to notice and a hearing"); *White v. Henman*, 977 F.2d 292, 294 (7th Cir. 1992) (stating that the lack of "hearings on the record" is why members of a disciplinary board "d[id] not receive the absolute immunity that real administrative adjudicators possess"), *with Capra v. Cook Cty. Bd. of Review*, 733 F.3d 705, 709–10 (7th Cir. 2013) (finding absolute immunity warranted because the defendant board had a hearing process "similar to a judicial proceeding—with notice and the opportunity to

be heard and to present evidence") (citing *Heyde*, 633 F.3d at 519); *Heyde*, 633 at 514–19 (granting absolute immunity where defendant could not execute function without "notice and hearing"); *Tobin*, 268 F.3d at 522 (granting absolute immunity where defendants' adjudication was "remarkably like a trial").

Here, Defendants have not provided the Court with sufficient information to assess whether absolute quasi-judicial immunity is warranted. For example, they have not discussed what, if any, hearing rights the Board affords, the extent to which the hearings are adversarial, what procedures they employ, or the adequacy of the notice given in anticipation of a hearing. Moreover, Defendants have provided no indication that precedent is important in the adjudicative process. *See Brunson*, 843 F.3d at 712–13. And, based on the record, the Board does not appear to issue reasoned written decisions. *See* Ill. Comp. Stat. 66/20(d); *Brunson,* 843 F.3d at 712–13. It may well be that the individual Defendants will be able to make a sufficient showing at the summary judgment stage, after some limited discovery. But they have not satisfied their burden at this stage of the proceeding.

## II. Qualified Immunity for Due Process Claims (Count IV)

The Board Defendants also contend that they are entitled to qualified immunity. "[Q]ualified immunity insulates government actors from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware." *Siliven v. Ind. Dep't of Child Servs.*, 635 F.3d 921, 925 (7th Cir. 2011) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). A defendant is not entitled to qualified

9

immunity where (1) the defendant violated the plaintiff's statutory or constitutional rights and (2) the statutory or constitutional right at issue was "clearly established" at the time of the defendant's conduct. *Id.* at 925–26 (citing *Pearson*, 555 U.S. at 230). "Courts are free 'to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Id.* at 926 (quoting *Pearson*, 555 U.S. at 236).

When a defendant claims qualified immunity, the plaintiff bears the burden of proving that her allegedly violated constitutional right was "clearly established" in a "particularized sense." *Lewis v. Downey*, 581 F.3d 467, 478 (7th Cir. 2009); *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 473 (7th Cir. 2011). To meet this burden, the plaintiff must show that, "at the time of the challenged conduct, the contours of a right [were] sufficiently clear that every reasonable official would have understood that what he [was] doing violates that right." *Hernandez*, 657 F.3d at 473–74 (internal quotation marks and alterations omitted). The plaintiff need not present "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

In determining whether a right is clearly established, courts "look first to controlling precedent on the issue from the Supreme Court and from this circuit." *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 528 (7th Cir. 2012) (citing *Estate of Escobedo v. Bender,* 600 F.3d 770, 781 (7th Cir. 2010)). "If such precedent is

lacking, [courts] look to all relevant case law to determine whether there was such a clear trend in the case law that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time." *Id*. (internal quotation marks omitted).

Eldridge first contends that, given the right to bear arms under the Second Amendment, the Board Defendants violated his right to due process under the Fourteenth Amendment by taking at least twenty months to determine whether Eldridge posed a danger to himself or others so that he might receive a concealed-carry permit. For their part, Defendants argue that Eldridge does not allege a cognizable violation of a constitutional right and that, in any event, such a right was not clearly established at the time of the alleged conduct.

Based upon a review of the applicable precedents, the Court concludes that the contours of a federal constitutional right to receive a gun-license within a particular period of time was not clearly established at the time of Defendants' alleged conduct. In *Rhein v. Coffman*, 825 F.3d 823, 825 (7th Cir. 2017), the plaintiff gun owner brought a claim alleging that the Chief of the Illinois Bureau of Firearms Services—like the Board here, an entity within the Illinois State Police—violated the gun owner's Second Amendment and due process rights by revoking the plaintiff's Firearm Owners Identification Card without a hearing and taking more than a year to restore his guns. Because the Seventh Circuit found the defendant not liable on the merits, it declined to decide whether it was clearly established, for qualified immunity purposes, that the ISP "as a whole took too long." *Id*.

11

However, the Seventh Circuit then proceeded to explain:

> The Supreme Court observed in *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), and *McDonald v. Chicago*, 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010), that many details about how to implement the Second Amendment need to be worked out. The timing of hearings on requests for the restoration of firearms is among those details. . . . *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and similar decisions hold that the Speedy Trial Clause of the Sixth Amendment allows years to pass before a criminal trial, even when the defendant is in custody. Where the Second Amendment fits on this spectrum is a novel question. . . . As far as we can see, courts have not established time limits for holding hearings and making decisions on motions to return firearms. We need not resolve the timing question in this case either.

*Id.* at 826–27. Thus, even at a generalized level, there does not appear to be a clearly established constitutional right regarding the timing of decisions that impact gun-possession rights. *See id.* It follows that it could not have been "beyond debate," *Hernandez*, 657 F.3d at 473–74, in a more "a particularized sense," *Lewis*, 581 F.3d at 478, that the Board Defendants violated Eldridge's constitutional rights by taking twenty months to determine whether he posed a danger to himself or others so that he might receive a concealed-carry permit.

Put another way, the question of when a delay in the processing of a concealed-carry license application rises to a level that so impinges upon an individual's Second Amendment right to bear arms such that it constitutes a constitutional violation is among the "many details" regarding the Second Amendment that still "need[s] to be worked out." Therefore, even assuming, for the sake of argument, that the Board members violated Eldridge's constitutional rights by taking twenty months to make its required determination, that right was not

12

clearly established at the time, and the doctrine of qualified immunity applies. Accordingly, the Board Defendants' motion to dismiss Eldridge's claim against the Board members in their individual capacities based upon the twenty-month delay is granted.

In addition to the above, Eldridge claims that the Board Defendants violated his procedural due process rights by failing to give him notice of the law enforcement entity that challenged his application, as well as the basis for the objection. Defendants contend that they are entitled to qualified immunity on this claim as well.

In *Berron v. Ill. Concealed Carry Licensing Review Bd.*, the Seventh Circuit addressed this very question, stating:

> More than 60 years ago the Supreme Court established that, when an agency is asked to reject an application, the agency must reveal at least a fair summary of the objection; otherwise a hearing is pointless. [citations omitted] Legitimately confidential details, such as an informant's identity, may be withheld, but the applicant is entitled to know the basics . . . . We can imagine the Board being stingy with information—for example, saying only "agency X objects because the applicant is routinely in trouble with the law". . . . That sort of disclosure would be useless. . . . Which course the Board chooses affects whether the regulation as administered comports with the Constitution.

825 F.3d 843, 845–46 (7th Cir. 2016).[4] Here, Eldridge alleges that the Board Defendants provided him no information other than that an agency had objected.

---

[4] To the extent this statement might be considered dicta, "even dicta may clearly establish a right," *Hanes v. Zurick*, 578 F.3d 491, 496 (7th Cir. 2009) (citing *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)), particularly where, as here, it is "lucid and unambiguous," *id.* (quoting *Wilkinson v. Russell,* 182 F.3d 89, 112 (2d Cir. 1999). *See also Estate of Escobedo v. Bender*, 600 F.3d 770, 786 (7th Cir. 2010) (citing *Anderson*, 483 U.S. at 640; *Hanes*, 578 F.3d at 496).

Because *Berron* was decided several months before Eldridge filed his application, the Court concludes that his right to meaningful notice of the law enforcement agency's objection was clearly established at the time of Defendants' conduct. As such, the individual Defendants are not entitled to qualified immunity as to Eldridge's notice claim.

## III. Pleading of Inadequate State Remedies as to Due Process Claims

According to the Board Defendants, even if they are not entitled to immunity, Eldridge's due process claim fails because he has not sought state law remedies or alleged that they were not available. Where a "plaintiff desir[es] to bring a procedural due process claim based on the 'random and unauthorized conduct' of a state actor," a plaintiff "must either avail herself of the remedies guaranteed by state law or [plead sufficient facts suggesting] that the available remedies are inadequate." *Doherty v. City of Chi.*, 75 F.3d 318, 323–24 (7th Cir. 1996) (citing *Daniels v. Williams*, 474 U.S. 327, 339–40 (1986); *Hudson v. Palmer*, 468 U.S. 517, 533, 539 (1984)); *see Toney-El v. Franzen*, 777 F.2d 1224, 1228 (7th Cir. 1985) (holding that plaintiff failed to state due process claim where he "alleged mistakes made by state employees rather than the state procedures by which those mistakes were made"); *Flower Cab Co. v. Petitte*, 685 F.2d 192, 193–94 (7th Cir. 1982) (stating that plaintiff had likely failed to state a due process claim based on allegations that defendant acted "arbitrarily, . . . in violation of [an] ordinance").

Here, when Eldridge's allegations are construed in his favor, the most reasonable interpretation of his claim is not that the Board Defendants' failure to

14

provide notice was a random or unauthorized act, but rather that they are construing their obligations and implementing procedures in a way that does not pass constitutional muster. As such, the pleading standard of *Doherty* is not applicable here.

For these reasons, Eldridge is not required to have pleaded inadequacy of state-court remedies.

## IV. Standing to Pursue Criminal-Statute and RICO Claims (Counts I and II)

The Board Defendants argue that Eldridge lacks standing to bring claims under 18 U.S.C. §§ 241 and 242 because they are criminal statutes, and under the civil RICO statute, 18 U.S.C. § 1964(c), because Eldridge seeks damages for only personal injury. Eldridge does not meaningfully address these arguments in his response.

First, the Board Defendants are correct that Eldridge may not bring claims under §§ 241 & 242. *See Weiland v. Byrne*, 392 F. Supp. 21, 22 (N.D. Ill. 1975) (stating that plaintiffs lack standing to bring such claims); *Chi. Title & Land Tr. Co. v. Rabin*, No. 11 CV 25, 2012 WL 266387, at *5 (N.D. Ill. Jan. 30, 2012) (stating that "criminal statutes governing conspiracies against civil rights and deprivation of rights under color of law . . . do not provide for a private right of action" and collecting cases); *Sayles v. Ind. Dep't of Corr.*, No. 11 CV 427, 2012 WL 1430720, at *2 (N.D. Ind. Apr. 20, 2012) ("The United States may bring criminal charges based on these statutes, but they do not create a private right of action."); *Pawelek v. Paramount Studios Corp.*, 571 F. Supp. 1082, 1083 (N.D. Ill. 1983) ("[I]t is well

15

settled no private right of action inheres in th[e]se criminal provisions."). This claim is dismissed.

As for Eldridge's civil RICO claim, "to obtain relief under RICO, indeed to have standing to pursue a RICO cause of action, a plaintiff must allege that she has been injured in her 'business or property by reason of' the RICO violation." *Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 590 (7th Cir. 2017) (citing 18 U.S.C. § 1964(c)). "The terms 'business or property' are . . . words of limitation which preclude recovery for personal injuries and the pecuniary losses incurred therefrom." *Id.* (quoting *Doe v. Roe*, 958 F.2d 763, 767 (7th Cir. 1992) (internal quotations omitted)). Thus, "a civil RICO action cannot be premised solely upon personal or emotional injuries." *Id.* (quoting *Doe*, 958 F.2d at 767) (internal quotations omitted)).

Here, Eldridge alleges that, as a result of the Board Defendants' alleged RICO violation, he has suffered "immense stress" and "mental anguish." Compl. at 8, 10. His claims of physical and emotional injury "clearly are not available under § 1964(c) and will not support standing to pursue a RICO claim." *Sabrina Roppo*, 869 F.3d at 590. The Board Defendants' motion to dismiss this claim is therefore granted.

**IV. Standalone Claim of Physical and Emotional Injury (Count III)**

In Count III, Eldridge seeks relief for emotional injury and physical effects resulting therefrom. Compl. at 8. Rather than alleging a separate claim of liability, Count III appears merely to seek this relief based upon his other claims. Therefore,

16

the Court, *sua sponte*, dismisses Count III for failure to state an independent claim upon which relief can be granted. *See, e.g., TABFG, LLC v. Pfeil*, No. 08 C 6979, 2009 WL 1209019, at *3 (N.D. Ill. May 1, 2009) (dismissing claim, *sua sponte*, for failure to state a claim).

## Conclusion

For the reasons provided herein, the Board Defendants' motion to dismiss is granted in part and denied in part. Counts I through III are dismissed with prejudice. The Illinois Concealed Carry Licensing Review Board is dismissed as a defendant. As for the individual Defendants, to the extent that they are being sued under Count IV in their official capacities, those claims are dismissed with prejudice. To the extent that they are being sued under Count IV in their individual capacities, the claim based on a delay in the Board's determination is also dismissed. Plaintiff may proceed against the individual Defendants in their individual capacities under Count IV to the extent that the claim is based on the failure to provide notice. A status hearing is set for April 12, 2018, at 9:00 a.m.

SO ORDERED.  ENTERED: 3/30/18

    _____
    **JOHN Z. LEE**
    **United States District Judge**